## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JAMES S. KROLICK, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civ. No. 06-139-LPS |
| | : | |
| MICHAEL J. ASTRUE,[1] | : | |
| Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |

Stephen A. Hampton, GRADY & HAMPTON, Dover, Delaware, Attorney for Plaintiff.

Colm F. Connolly, United States Attorney, and Dina White Griffin, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Wilmington, Delaware; Michael McGaughran, Regional Chief Counsel, SOCIAL SECURITY ADMINISTRATION, Philadelphia, Pennsylvania, Attorneys for Defendant.

## **MEMORANDUM OPINION**

August 18, 2008
Wilmington, Delaware

---

[1]On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Accordingly, pursuant to Fed. R. Civ. P. 25(d)(1), Michael J. Astrue is substituted for the former Commissioner Jo Anne B. Barnhart.

**STARK, U.S. Magistrate Judge**

# I. INTRODUCTION

Plaintiff James S. Krolick ("Krolick") appeals from a decision of Defendant Michael J. Astrue, the Commissioner of Social Security ("Commissioner"), denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-33. This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently pending before the Court are cross-motions for summary judgment filed by Krolick and the Commissioner. (D.I. 18, 21)  Krolick's motion for summary judgment asks the Court to reverse defendant's decision and award him DIB or, in the alternative, to remand for further proceedings before the Commissioner. (D.I. 18)  The Commissioner's motion for summary judgment requests that the Court affirm the denial decision and enter judgment in the Commissioner's favor. (D.I. 21)  For the reasons set forth below, Krolick's motion for summary judgment will be denied and the Commissioner's motion for summary judgment will be granted.

# II. BACKGROUND

## A.    Procedural History

Krolick's initial DIB application was filed on January 7, 2004. (D.I. 6 ("Transcript" and hereinafter "Tr.") at 98)  That application was denied on May 18, 2004 and again on reconsideration on September 15, 2004. Tr. at 77-82, 88-92.  Krolick subsequently submitted a request for an appeal before an administrative law judge ("ALJ"). Tr. at 93-94.  The appeals hearing was held before ALJ Judith Showalter on June 16, 2005. Tr. at 30-76.  Represented by

1

counsel, Krolick testified, as did his wife and a vocational expert. *Id.* On September 14, 2005, the ALJ issued a decision confirming the denial of benefits to Krolick. Tr. at 17-24. On January 20, 2006, Krolick submitted additional evidence to the appeals council for review. Tr. at 9. Finding no reason to review the ALJ's decision, the Appeals Council denied Krolick's request for review. Thus, the ALJ's September 14, 2005 adverse decision became the final decision of the Commissioner. *See* Tr. at 6-8; *see also* 20 C.F.R. §§ 404.955, 404.981; *Sims v. Apfel*, 530 U.S. 103, 107 (2000).

On March 1, 2006, Krolick filed a Complaint seeking judicial review of the ALJ's September 14, 2005 decision. (D.I. 1) On May 4, 2007, Krolick moved for summary judgment. (D.I. 18) The Commissioner filed a cross-motion for summary judgment on June 15, 2007. (D.I. 21) Thereafter, on March 14, 2008, the parties consented to the jurisdiction of a United States Magistrate Judge. (D.I. 29)

## B.    Factual Background

### 1.    Plaintiff's Medical History, Treatment, And Condition

At the time he filed the relevant DIB application in January 2004, Krolick was 41 years old. Tr. at 36. He has a high school education. Tr. at 37. He had past work experience as a police officer. Tr. at 37-38. He retired from the police force in 2003 after twenty years of service. Tr. at 38.

Krolick claims to have been disabled since November 7, 2003,[2] due to pain and spasms in

---

[2]The relevant time period in this case began on November 7, 2003, the date Krolick allegedly became disabled. Tr. at 101. The last date Krolick was insured for purposes of DIB was December 31, 2007. Tr. at 108. Accordingly, to receive DIB, Krolick has to prove he was disabled as of some date between November 7, 2003 and December 31, 2007. *See* 42 U.S.C. § 423(a)(1)(A) & (c)(1)(B); 20 C.F.R. §§ 404.101(a), 404.131(a).

his neck and lower back. Tr. at 38-39. His claimed disability arose primarily as the result of an automobile accident on February 14, 1999. Tr. at 39, 42, 340-41. After the accident, Krolick was admitted to a hospital emergency room and was noted to have a cervical hyperextension injury and lumbosacral contusion. Tr. at 333. On February 24, 1999, Krolick met with a general surgeon, Dr. Sabido, for injuries sustained in the automobile accident. Tr. at 161. On March 9, 1999, orthopedic physician Dr. Suarez examined Krolick and found that he had pain and spasms of the cervical lumbar spine, pain into his shoulders and down both legs, and moderate to large disc herniation. Tr. at 398. Between March 25, 1999 and July 27, 2000, Krolick underwent at least 88 physical therapy evaluations with the Neuroscience Associates of New York. Tr. at 259-90. His pain was 9 out of a maximum of 10 on his initial visit. Tr. at 153.

On April 1, 1999, Krolick met with a neurologist, Dr. Perel, who wrote that Krolick's MRI disclosed moderate to large left-sided disc herniation. Tr. at 155. Dr. Perel stated that Krolick should not sit for extensive periods or do excessive bending or lifting. Tr. at 156-57. On April 29, 1999, Dr. Perel concluded that Krolick had post head trauma syndrome, cervical radiculopathy, and lumbar radiculopathy. Tr. at 170. Between May 1999 and March 2000, Dr. Perel continued Krolick on restricted police officer duty. Tr. at 163-66.

On June 16, 1999, Dr. Sabido referred Krolick to neurosurgeon Dr. Chang for evaluation of his cervical injury. Tr. at 159. On August 10, 1999, Dr. Chang wrote that Krolick continued to have right cervical radiculopathy, that he was not to resume police officer duties, and that he was currently working in an office setting. Tr. at 257.

On September 20, 1999, Krolick visited Dr. Bakhashi, a pain management specialist, who recommended that Krolick be evaluated by a neuropsychologist for memory and concentration

3

difficulties and that he undergo epidural steroid injections. Tr. at 253-54. On November 17, 1999, neuropsychologist Dr. Weiss wrote that Krolick was tense and depressed and showed signs of significant post traumatic stress disorder (PTSD). Tr. at 249-50, 503. In February and March 2000, Krolick received a series of epidural steroid injections from Dr. Bakhashi. Tr. at 171-219.

From November 3, 2000 to March 16, 2001, Krolick underwent twenty-seven physical therapy treatments at Healthcare Associates of Staten Island. Tr. at 224-34. On September 21, 2001, Krolick visited Dr. Maloney, a pain management doctor, who noted that epidural injections might be contraindicated in the future. Tr. at 450-51. On November 6, 2001, Dr. Rawlins, a spinal surgeon, evaluated Krolick and recommended non-operative management of his symptoms. Tr. at 291-92.

On February 27, 2002, Krolick made his initial visit to the NYU Pain Management Center, where it was noted that he had cervical radiculopathy with limited flexion and extension in range of motion and mild to moderate tenderness and spasm in his neck. Tr. at 437. From June 20, 2002 to July 22, 2003, Krolick received a series of epidural injections from Dr. Dubois at the NYU Pain Management Center. Tr. at 413, 422, 425, 428.

On December 29, 2003, Krolick saw neurosurgeon Dr. Cohen and told him that the pain in his neck was getting worse; Dr. Cohen did not recommend surgery. Tr. at 438-39. On January 12, 2004, Dr. Cohen noted that Krolick continued to complain of neck, shoulder, and low back pain. Tr. at 440. On exam, Krolick had pain with both flexion and extension of the cervical spine. *Id.* His MRI revealed a disc herniation at C5-6 causing some mild neural foraminal compromise on the left. *Id.*

Having filed his DIB application in January 2004, on April 4, 2004 Krolick was

4

examined by Dr. Rajs-Nepomniashy at the request of the New York State Department of
Temporary and Disability Assistance Division of Disability Determinations. Tr. at 443. The
doctor reported that Krolick could stand up to 20 minutes, walk up to two blocks, and carry up to
ten pounds. Tr. at 442-43. He could not squat due to back pain. Tr. at 443. His cervical range
was limited on extension. *Id.* His lumbar spine range of motion was limited. *Id.* His bilateral
shoulder range of motion was also decreased. *Id.* He experienced muscle spasm in the cervical
and lumbar paraspinals and decreased sensation to light touch in the left upper extremity. *Id.*
Based on these findings, the doctor concluded that Krolick was unable to perform any work
requiring overhead activities, weight lifting, carrying, pulling, pushing, or bending. Tr. at 444.

On May 4, 2004, the Medical Board for the NYC Police Pension Fund issued a decision
in favor of Krolick's application for accident disability retirement. Tr. at 452-54. The Medical
Board noted that Krolick's application had been denied on five prior occasions and that he had
worked full police duty until his retirement in November 2003. Tr. at 452-53. During his May
2004 Medical Board evaluation in connection with that application, Krolick walked with a non-
antalgic gait. *Id.* He could heel and toe walk, but with some difficulty and increased pain. *Id.*
He could do a deep knee bend. *Id.* His manual motor testing showed 5/5 strength. *Id.* His wrist
extensors and grip showed 4/5 strength, reflecting a change from previous examinations and
evidence of some weakness. *Id.* Based on review of the cervical spine MRI's, which revealed a
C5-6 disc herniation and evidence of weakness of the left upper extremity, the members of the
Medical Board concluded that there were significant objective findings precluding Krolick from
performing the full duties of a New York City police officer and accordingly recommended
approval of his application for Accident Disability Retirement. *Id.*

5

On May 14, 2004, state agency medical consultants assessed Krolick's physical residual functional capacity ("RFC") and determined that he could perform sedentary exertional work. Tr. at 549. He could also perform postural activities occasionally and unlimited handling and fingering, but he had limited feeling and reaching in all directions. Tr. at 550.

In October 2004, Krolick began seeing Dr. Islam, a Delaware pain doctor. Tr. 571. On November, 30, 2004, Krolick visited Dr. Sweeney, a primary care doctor in Delaware, who noted that Krolick felt stressed and had difficulty unwinding. Tr. at 562. Dr. Sweeney's assessments included suspect anxiety/stress disorder, chronic neck and lower back pain, and tremor in his hands associated with stress. Tr. at 563. On March 1, 2005, Krolick described to Dr. Islam how he had been very active on a trip to Hawaii but felt worse after the long plane ride. Tr. at 582. On May 3, 2005, Krolick had an MRI on his neck, which showed little change from a study that had been performed by Dr. Islam in October 2004. Tr. at 589.

Krolick went to psychologist Dr. Keyes on July 21, 2005 for a consultative exam ordered by the ALJ. Dr. Keyes noted that Krolick exhibited behaviors and symptoms of PTSD. Tr. at 592. Dr. Keyes assigned Krolick a Global Assessment Functioning (GAF) score of 60-65. Tr. at 593.[3] Krolick had no restrictions on his ability to understand, remember, carry out instructions, or respond appropriately to work pressures in a work setting. Tr. at 594. Due to Krolick's

---

[3]The GAF score is a numeric value from zero through 100 used by mental health clinicians to rate the occupational, psychological, and social functioning of adults. A higher score is indicative of better mental health. A GAF score of 51-60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. A GAF score of 61-70 indicates that a person has some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functions well and has some meaningful relationships. AMERICAN PSYCHIATRIC ASS'N., DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th ed. 2000).

reports of anxiety during stress or pressure, Dr. Keyes noted that Krolick had slight limitations but generally functioned well. Tr. at 595.

On July 21, 2005, Krolick went to Dr. Swaminathan for a consultative medical exam ordered by the ALJ. Tr. at 600-01. On general physical examination, Dr. Swaminathan noted there was no focal wasting of any muscles. Tr. at 598. Krolick walked with a mild antalgic gait and had an extremely stiff neck. *Id.* He experienced difficulty turning his head to the side and had to turn his whole body to look behind him. *Id.* His neck revealed significant tenderness over the bilateral trapezius muscles with myofascial nodules noted in the bilateral trapezius. *Id.* His range of motion of the cervical spine revealed restricted rotations. *Id.* Upper extremity manual muscle testing revealed restricted abduction, forward flexion of bilateral shoulders, and diminished bilateral grip strength. *Id.* Examination of the cervical spine revealed C5-6, C6-7 facet intervertebral tenderness with bilateral paraspinal muscle spasm. Tr. at 598-99. Examination of the lower lumbar spine revealed paraspinal muscle spasm with restricted extension with pain and facet loading. Tr. at 599. Krolick's straight leg raising test was negative. *Id.* His lower extremity manual muscle testing revealed diminished muscle strength secondary to pain. *Id.* From these findings, Dr. Swaminathan opined that Krolick could stand and/or walk less than two hours in an eight hour day, was limited to less than 6 hours a day of sitting even with normal breaks, was limited in pushing and pulling with upper and lower extremities, and should never climb, balance, crouch, crawl, or stoop. Tr. at 600-01.

## 2.    The Administrative Hearing

At Krolick's administrative hearing, the ALJ heard the testimony of Krolick; his wife, Patricia A. Krolick; and Jan Howard-Reed, an impartial vocational expert. Tr. at 30-76.

7

a.    **Krolick's Testimony**

Krolick testified that he was a New York City police officer from 1984 to 2003. Tr. at 37. He received a "standard retirement" from the New York City Police Department in November 2003 after twenty years of service. Tr. at 38.[4] Krolick performed normal police duties until 1999, and then alternated between full-duty assignment and limited-duty desk positions from 1999 until 2003. Tr. at 38. Krolick's pre-existing neck and back problems became substantially worse after his automobile accident on February 14, 1999. Tr. at 39.

Krolick has lower back pain and pain in his neck going into his shoulders, arms, and the back of his head. Tr. at 41. Krolick has pain everyday, sometimes mild and sometimes debilitating. Tr. at 40. He has muscle spasms everyday, which may worsen depending on the activity and the weather. *Id.* He suffers from headaches at least a couple of times a week. Tr. at 62. On an average day, his pain is a four on a ten point scale. Tr. at 43. On a bad day, he rates his pain as nine-plus out of ten even while on medication. Tr. at 62. During the administrative hearing, Krolick asked the ALJ for permission to stand up and move around because of his discomfort. Tr. at 41. Krolick can walk only for about five minutes before he has to sit down and rest. Tr. at 51. Krolick can stand 10 or 20 minutes at a time. Tr. at 52. He can sit in a chair with a straight back for only a matter of minutes. *Id.* He is limited in turning his head from side to side. Tr. at 41. He had tried to walk thirty minutes a day upon his doctor's recommendation, but he had been unable to do so all at once. Tr. at 51.

Krolick's medications include a Fentanyl patch, Vicodin, Baclofen, Neurontin, and

---

[4]As previously noted, on May 4, 2004 the Medical Board for the NYC Police Pension Fund approved Krolick's application for Accident Disability Retirement. Tr. at 452-54.

Amitrptyline. Tr. at 40. Krolick's medications make him feel "sleepy or dopey" and upset his stomach. Tr. at 51. In addition to medication, Krolick has been prescribed physical therapy, epidural injections, and trigger point injections. Tr. at 42. Krolick testified that the trigger point injections provide only temporary relief from his muscle spasms. Tr. at 58. Krolick does not receive treatment on a regular basis for his physical injury, and he has never received medication or sought emergency room treatment for his mental injuries. Tr. at 46-47. He is seeking counseling for his post traumatic stress issues. Tr. at 44-45. He does not suffer from panic or anxiety attacks. Tr. at 48-49. Krolick was told by his doctor to perform breathing exercises to control his anxiety. Tr. at 64. Krolick believes he has concentration or memory problems. Tr. at 49.

At home, Krolick can climb stairs, bend, and kneel. Tr. at 52-53. Krolick wakes up each day around 5:30 a.m. because he has difficulty sleeping. Tr. at 54. He takes care of his personal hygiene. *Id.* His wife cleans the house, does the yard work, does the laundry, and cooks for him. Tr. at 54-55. Krolick drives to Staten Island, New York a couple of times each month to visit his father and his daughters. Tr. at 45, 55.

### b. Mrs. Krolick's Testimony

Patricia Krolick testified that she has been with her husband almost constantly for five and one-half years. Tr. at 66. She believes his physical condition is worsening. Tr. at 67. She witnesses his feet turning blue, his muscle spasms, his stomach problems, the twitching of his hands, and his shaking. Tr. at 68. She notes his complaints of headaches and nightmares and witnesses him crying about the February 14, 1999 automobile accident. Tr. at 69. On his bad weeks, he becomes very emotional about the police officer who died in that accident. Tr. at 70.

9

She added that Krolick needs to "address the problem and try to get over it." Tr. at 71.

### c.    The Vocational Expert's Testimony

Vocational Expert Jan Howard-Reed testified that if a person of Krolick's age, education,

and work experience were limited in the manner ultimately found by the ALJ, such a person

would not be able to perform Krolick's past relevant work. Tr. 74. The vocational expert

believed that such a person could still perform simple, unskilled, sedentary work, such as the

work of a sedentary security guard, an order clerk, or an assembler. *Id.* The expert added that

there were 70,000 sedentary security guard jobs available nationally, including 300 locally. *Id.*

There were 90,000 order clerk jobs available nationally, including 300 locally. *Id.* There were

85,000 assembler jobs available nationally, including 400 locally. *Id.* On cross-examination by

Krolick's attorney, the expert testified that if due to muscle spasms and pain in the back and

neck, an individual was not able to sit for more than 10 or 15 minutes at a time, to walk more

than about five minutes, and to stand more than about five minutes without changing position to

seek relief from the pain, all of these jobs would be unavailable to the individual. Tr. at 75.

### 3.    The ALJ's Findings

On September 14, 2005, the ALJ issued the following findings:

1.    The claimant meets the non-disability requirements for a period of
      disability and disability insurance benefits set forth in section 216(i) of the
      Social Security Act through December 2009.

2.    The claimant has not engaged in substantial gainful activity since
      November 7, 2003 (20 CFR § 404.1520(b)).

3.    The claimant has the following severe impairments: degenerative disc
      disease of the cervical spine and degenerative disc disease of the lumbar
      spine (20 CFR § 404.1520(c)).

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR § 404, Subpart P, Appendix 1, Regulations No. 4 (20 CFR § 404.1520(d)).

5.      Upon careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work with the following additional limitations: simple, unskilled work due to the side effects of medication; only occasional climbing, balancing, stooping, kneeling, crouching and crawling; and limited reaching in all directions with the arms.

6.      The claimant is unable to perform any past relevant work (20 C.F.R. § 404.1565).

7.      The claimant was born on October 31, 1962 and was 41 years old on the alleged disability onset date, which is defined as a younger individual age 18-44 (20 C.F.R. § 404.1563).

8.      The claimant has at least a high school education and is able to communicate in English (20 C.F.R. § 404.1564).

9.      Transferability of job skills is not material to the determination of disability due to the claimant's age (20 C.F.R. § 404.1568).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant number in the national economy that the claimant can perform (20 C.F.R. §§ 404.1560(c) and 404.1566).

11.     The claimant has not been under a "disability," as defined in the Social Security Act, from November 7, 2003 through the date of this decision (20 C.F.R. § 404.1520(g)).

Tr. at 19-24.

## III.    STANDARD OF REVIEW

### A.    Motion For Summary Judgment

Both parties filed motions for summary judgment pursuant to Federal Rule of Civil

Procedure 56(c). In determining the appropriateness of summary judgment, the Court must

"review the record taken as a whole . . . draw[ing] all reasonable inferences in favor of the

nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves*

*v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (internal citation and quotation

marks omitted). If the Court is able to determine that "there is no genuine issue as to any

material fact" and that the movant is entitled to judgment as a matter of law, summary judgment

is appropriate. *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005) (quoting Fed. R. Civ.

P. 56(c)).

## B.    Review Of ALJ Findings

The Court must uphold the Commissioner's factual decisions if they are supported by

"substantial evidence." *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Monsour Medical Center v.*

*Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). "Substantial evidence" means less than a

preponderance of the evidence but more than a mere scintilla of evidence. *See Rutherford v.*

*Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). As the United States Supreme Court has noted,

substantial evidence "does not mean a large or significant amount of evidence, but rather such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

In determining whether substantial evidence supports the Commissioner's findings, the

Court may not undertake a *de novo* review of the Commissioner's decision and may not re-weigh

the evidence of record. *See Monsour*, 806 F.2d at 1190. The Court's review is limited to the

evidence that was actually presented to the ALJ. *See Matthews v. Apfel*, 239 F.3d 589, 593-95

(3d Cir. 2001). "Credibility determinations are the province of the ALJ and only should be

12

disturbed on review if not supported by substantial evidence." *Pysher v. Apfel*, 2001 WL 793305 at *3 (E.D. Pa. Jul. 11, 2001).

The Third Circuit has explained that a "single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g. that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983).

Thus, the inquiry is not whether the Court would have made the same determination but, rather, whether the Commissioner's conclusion was reasonable. *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Even if the reviewing court would have decided the case differently, it must give deference to the ALJ and affirm the Commissioner's decision if it is supported by substantial evidence. *See Monsour*, 239 F.3d at 1190-91.

# IV. DISCUSSION

## A. Disability Determination Process

Title II of the Social Security Act, 42 U.S.C. § 423(a)(1)(D), "provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability." *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). In order to qualify for DIB, the claimant must establish that he or she was disabled prior to the date he or she was last insured. *See* 20 C.F.R. § 404.131; *Matullo v. Bowen*, 926 F.2d 240, 244 (3d Cir. 1990). A "disability" is defined as the inability to do any substantial gainful activity by reason of any

13

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. *See* U.S.C. §§ 423(d)(1)(A), 1382(c)(a)(3). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A); *Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003).

In determining whether a person is disabled, the Commissioner is required to perform a five-step sequential analysis. *See* 20 C.F.R. § 404.1520; *Plummer v. Apfel*, 186 F.3d 422, 427-28 (3d Cir. 1999). If a finding of disability or non-disability can be made at any point in the sequential process, the Commissioner will not review the claim further. 20 C.F.R. § 404.1520(a)(4).

At step one, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. *See* 20 C.F.R. § 404.1520(a)(4)(i) (mandating finding of non-disability when claimant is engaged in substantial gainful activity). If the claimant is not engaged in substantial gainful activity, step two requires the Commissioner to determine whether the claimant is suffering from a severe impairment or combination of impairments that is severe. *See* 20 C.F.R. § 404.1520(a)(4)(ii) (mandating finding of non-disability when claimant's impairments are not severe). If the claimant's impairments are severe, the Commissioner, at step three, compares the claimant's impairments to a list of impairments (the "listings") that are presumed severe enough to preclude any gainful work. *See* 20 C.F.R. § 404.1520(a)(4)(iii); *Plummer*, 186 F.3d at 428. When a claimant's impairment or its equivalent matches an impairment in the

14

listing, the claimant is presumed disabled. *See* 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant's impairment, either singly or in combination, fails to meet or medically equal any listing, the analysis continues to steps four and five. *See* 20 C.F.R. § 404.1520(e).

At step four, the Commissioner determines whether the claimant retains the residual functioning capacity ("RFC") to perform her past relevant work. See 20 C.F.R. § 404.1520(a)(4)(iv) (stating claimant is not disabled if able to return to past relevant work); *Plummer*, 186 F.3d at 428. A claimant's RFC is "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir. 2001). "The claimant bears the burden of demonstrating an inability to return to her past relevant work." *Plummer*, 186 F.3d at 428.

If the claimant is unable to return to her past relevant work, step five requires the Commissioner to determine whether the claimant's impairments preclude her from adjusting to other available work. *See* 20 C.F.R. § 404.1520(g) (mandating finding of non-disability when claimant can adjust to other work); *Plummer*, 186 F.3d at 428. At this last step, the burden is on the Commissioner to show that the claimant is capable of performing other available work. *See Plummer*, 186 F.3d at 428. In other words, the Commissioner must prove that "there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience and [RFC]." *Id.* In making this determination, the ALJ must analyze the cumulative effect of all of the claimant's impairments. *See id.* At this step, the ALJ often seeks the assistance of a vocational expert. *See id.*

15

**B.     The ALJ's Decision Is Supported By Substantial Evidence**

On appeal, Krolick presents three arguments: (1) the ALJ failed to consider all of the

relevant evidence in the case record when determining Krolick's RFC; (2) the vocational expert's

testimony was based on a flawed hypothetical question which did not contain Krolick's actual

limitations, and therefore did not support the ALJ's conclusion that there was work available for

Krolick to perform in the national economy; and (3) the ALJ drew improper conclusions

concerning Krolick's credibility based on his medical treatment history, work attempts, and daily

activities. As explained below, the Court finds substantial evidence to support the Commissioner

on all three of these points.

**1.     The ALJ Properly Considered All Of The Relevant Evidence In The Medical
         Record To Determine That Krolick Retained The RFC For Sedentary Work**

Krolick first argues that the ALJ did not consider all of the relevant evidence in

determining his RFC, claiming that the ALJ ignored the medical opinions of Dr. Swaminathan,

Dr. Rajs-Nepomniashy, and Dr. Keyes. Krolick further contends that the ALJ failed to explain

why she did not adopt the opinions of these treating physicians. The Commissioner responds

that the ALJ fully incorporated all of Krolick's credibly-supported functional limitations into the

step-four RFC finding. The Commissioner maintains that the ALJ gave significant weight to the

opinion of Dr. Swaminathan, which suggested a capacity for sedentary work, as this was

consistent with the record as a whole. Additionally, the Commissioner points out that the ALJ's

RFC assessment recognized limitations due to pain, including limitations on overhead reaching,

sedentary lifting, and postural movement, as noted in the opinion of Dr. Rajs-Nepomniashy.

Finally, the Commissioner asserts that the ALJ omitted the opinion of Dr. Keyes from her RFC

16

determination because the finding by Dr. Keyes that Krolick suffered from post-traumatic stress disorder did not amount to a work-related limitation in this context.

When determining a claimant's RFC, the ALJ must consider all relevant evidence. *Fargnoli*, 247 F.3d at 41; *see also* 20 C.F.R. §§ 404.1527(e)(2), 404.1545(a), 404.1546. This includes "medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others." *Fargnoli*, 247 F.3d at 41. The ALJ must provide some explanation when she has rejected relevant evidence or when there is conflicting probative evidence in the record. *See Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981). The Court is "unable to conduct [its] substantial evidence review if the ALJ fails to identify the evidence he or she rejects and the reason for its rejection." *Walton v. Halter*, 243 F.3d 703, 710 (3d Cir. 2001). However, "the ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Moreover, it is not for this Court to reweigh the various medical opinions in the record. *See Monsour* at 1190. Instead, the Court's review is limited to determining if there is substantial evidence to support the ALJ's weighing of those opinions. *Id.*

The Court finds that the ALJ gave proper weight to all credible medical evidence and adequately explained why any conflicting opinions were not adopted in her assessment of RFC. First, with regard to the opinion of the consultative examiner, Dr. Swaminathan, the ALJ expressly noted Dr. Swaminathan's conclusions that Krolick

> can lift up to twenty pounds occasionally and less than ten pounds frequently . . . stand and/or walk less than two hours in an eight hour workday . . . sit for less than six hours . . . was limited in pushing and pulling in both arms and legs . . . can never

17

climb, balance, crouch, crawl or stoop . . . and is limited in his ability to reach in all directions (including overhead), and limited in exposure to temperature extremes, noise, dust, vibration, humidity/wetness, hazards (machinery, heights, etc.), and fumes, odors, chemicals, and gases.

Tr. at 22-23. Giving significant weight to the reports of both Dr. Swaminathan and the state medical consultants, the ALJ appropriately concluded that these limitations suggested a capacity for sedentary work.

Krolick nevertheless argues that the ALJ drew the wrong conclusion from Dr. Swaminathan's opinion, arguing that opinion suggests an incapacity for sedentary work, based on findings that Krolick is unable to sit, stand, or walk for the required length of time and is completely unable to stoop. In this regard, Krolick cites Social Security Ruling 96-9p (the "Ruling"), which provides that "[a] complete inability to stoop would significantly erode the unskilled sedentary occupation base" and therefore "usually" warrant a finding of disability, the Ruling does not indicate that all sedentary jobs would be worthwhile or that a finding of disability is mandated. Moreover, here the ALJ complied with the Ruling's guidance by obtaining the assistance of a vocational expert.

Krolick next contends that the ALJ improperly failed to consider the findings of the New York medical consultant Dr. Rajs-Nepomniashy. Dr. Rajs-Nepomniashy indicated that Krolick was unable to do any work requiring overhead activities, weight lifting, carrying, pulling, pushing, or bending. Tr. at 444. While the ALJ did not explicitly refer to the opinion of Dr. Rajs-Nepomniashy, she did take note of these additional limitations in her assessment, limitations that were likewise included in the findings of the state medical consultants and Dr. Swaminathan. Dr. Rajs-Nepomniashy's opinion was consistent with the medical record and the ALJ had not rejected it. The ALJ was not required to provide explicit reference to it in her

18

opinion.

Lastly, Krolick asserts that it was improper for the ALJ to ignore completely the opinion of the consultative examiner, Dr. Keyes, who determined that Krolick exhibited behaviors and symptoms of PTSD. It was appropriate for the ALJ to exclude PTSD from the RFC assessment because there was no evidence that it resulted in any functional limitation. *See Wimberly v. Barnhart*, 128 Fed. Appx. 861 (3d Cir. Apr. 18, 2005) (finding that ALJ did not violate duty to evaluate claimant's symptoms by failing to take claimant's obesity into account where record did not show that claimant's condition resulted in any functional limitation); *see also Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) ("[I]f the impairments are not severe enough to limit significantly the [Plaintiff's] ability to perform most jobs, by definition the impairment does not prevent the [Plaintiff] from engaging in substantial gainful activity."). Krolick's PTSD was noted by Dr. Weiss as early as November 1999, but Krolick continued to perform full and/or limited duties as a police officer until four years later. Dr. Keyes further assessed Krolick's GAF at 60-65, noted that Krolick had adequate attention and concentration, intact memory in the average/normal range, and appropriate interpersonal skills. Tr. at 591-94. Hence, Krolick's PTSD did not result in any functional impairment.

### 2.    The Vocational Expert's Testimony Provided Substantial Evidence Supporting The ALJ's Decision

Krolick next challenges the vocational expert's testimony, which Krolick asserts was based on a flawed hypothetical question that failed to incorporate the opinions of three examining consultants as well as the limitations documented in the records of Krolick's treating physicians. The Commissioner counters that the ALJ's hypothetical question was proper because it incorporated Krolick's credible limitations, which suggested a capacity for sedentary work.

19

Furthermore, the Commissioner insists that the ALJ appropriately excluded from her hypothetical question limitations reported by Krolick's treating physicians that were observed during the time Krolick was working full duty as a police officer.

A vocational expert's testimony in response to a hypothetical question is sufficient to provide substantial evidence of a disability claimant's ability to perform work if the hypothetical accurately sets out all of the claimant's impairments which have been found to exist on the basis of credible evidence. *See Rutherford*, 399 F.3d at 554. The ALJ is not required to submit to the vocational expert every impairment alleged by the claimant. *Id.* Limitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible; the ALJ can choose which portions of the existing evidence to credit in the hypothetical question so long as she does not reject evidence for no reason or for the wrong reason. *See Boulanger v. Astrue*, 520 F. Supp. 2d 560, 578 (D. Del. 2007).

Krolick argues that the ALJ failed to include in her hypothetical question not only the opinions of three examining consultants – Dr. Swaminathan, Dr. Rajs-Nepomniashy, and Dr. Keyes – but also the limitations noted by his treating physicians. Specifically, he claims the hypothetical question did not include any limitation on his ability to sit, did not account for his restricted range of motion in his cervical or lumbar spine, did not accurately note his limitations on standing or walking, contained no limitations on the use of his lower extremities, and did not contain any limitations on his ability to climb, balance, crouch, crawl, stoop, or bend. Krolick characterizes the evidence of these impairments and his PTSD as "overwhelming," and claims that the ALJ deliberately failed to cite this evidence in order to deny him his benefits.

The Court finds, however, that the hypothetical question posed by the ALJ to the

vocational expert was adequate and proper. First, the ALJ was not obligated to address any of

the medical opinions by Krolick's treating physicians predating the date of his retirement

because, during that period, Krolick was employed as a police officer. Plainly, the cited

limitations did not preclude him from performing substantial gainful activity. *See* 20 C.F.R.

§ 404.1420(b). Second, although the ALJ did not explicitly state all of Krolick's exertional

limitations in her hypothetical question, she nevertheless accounted for them by posing a

hypothetical that sought information about work limited to a sedentary level of exertion. Tr. at

74. Lastly, the ALJ properly excluded evidence of Krolick's PTSD because, as previously noted,

this was not a severe mental impairment precluding him from work-related activities.

## 3.     Substantial Evidence Supported The ALJ's Conclusion That Krolick's Statements Concerning His Symptoms Were Not Wholly Credible

Finally, Krolick claims that the ALJ made improper conclusions concerning his

credibility based on his medical treatment history, work attempts, and daily activities. By

contrast, the Commissioner insists that the ALJ appropriately found Krolick's allegations

regarding the effects of his impairments on his functional abilities not credible.

An ALJ's credibility determination is entitled to great deference. *See Reefer v. Barnhart,*

326 F.3d 376, 380 (3d Cir. 2003). In this Circuit it is settled that: (1) subjective complaints of

pain must be considered, even when not fully confirmed by objective medical evidence;

(2) subjective pain may support a claim for disability benefits and may be disabling; (3) where

such subjective complaints are supported by medical evidence, they should be afforded great

weight; and (4) where a claimant's report of pain is reasonably supported by medical evidence,

the ALJ may not discount the pain without contrary medical evidence. *See Green v. Schweiker,*

749 F.2d 1066, 1068 (3d Cir. 1984) (internal citations omitted). An ALJ can reject a claimant's subjective testimony if she finds it incredible, but the ALJ must indicate in the decision which evidence has been rejected. *See Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 433 (3d Cir. 1999).

Krolick believes the ALJ erred in concluding that he did not receive extensive treatment for his back and neck pain and by mentioning his work history and daily activities to suggest that his statements concerning the limiting effects of his symptoms were not entirely credible. In particular, Krolick argues that it was improper for the ALJ to mention his trip to Hawaii, citing *Fargnoli v. Massanari*, 247 F.3d 34, 40 n.5 (3d Cir. 2001), in which the Court found that the claimant's trip to Europe could not be the basis for finding that he was capable of engaging in substantial gainful activity. Krolick further references *Dass v. Barnhart*, 386 F. Supp. 2d 568 (D. Del. 2005), as support for his claim that the ALJ improperly weighed evidence of his work history and activities of daily living to question his credibility.

The Court concludes that the ALJ had substantial evidence for her conclusion that Krolick's statements concerning the intensity, duration, and limiting effects of his symptoms were not reasonably substantiated by the medical evidence. By providing ample support for her credibility findings, the ALJ's evaluation of Krolick's subjective reports of pain was proper under the regulatory standards. The ALJ noted inconsistencies in Krolick's testimony, including his ability to drive from Delaware to Staten Island, New York several times a month to visit his daughters and father; his ability to travel to Hawaii, where he indicated to his treating physician that he was "very active;" and his ability to continue working after his 1999 injury until his retirement in November 2003. Tr. at 21. The ALJ found that Krolick's complaints were not

22

reflected in the medical record due to the lack of extensive treatment he received for his neck and back pain, medical source statements indicating an ability to perform light duty, five previous denials of disability benefits by the City of New York, and the fact that his neurological examination fell within normal limits and revealed a good range of motion in his arms and cervical spine. Tr. at 21-22.

The ALJ did not, as Krolick alleges, improperly cite his trip to Hawaii as the basis for finding that he was capable of engaging in substantial gainful activity; this was merely one of many considerations she took into account in assessing the credibility of his testimony. Hence, this case is distinguished from *Fargnoli*. Likewise, Krolick's reliance on *Dass* is unpersuasive because, unlike there, here the ALJ did not give improper weight to the claimant's ability to undertake daily activities. Here, instead, the ALJ gave balanced consideration to a number of factors, including not only Krolick's daily activities, but also his medical records, his work history, and his subjective allegations.

## V. CONCLUSION

Accordingly, for the reasons set forth in this Memorandum Opinion, Krolick's motion for summary judgment will be DENIED and the Commissioner's motion for summary judgment will be GRANTED. An appropriate Order follows.

23

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JAMES S. KROLICK, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civ. No. 06-139-LPS |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |

## ORDER

At Wilmington, this 18th day of August, 2008, consistent with the Memorandum Opinion

issued this same date, IT IS HEREBY ORDERED that:

1.   Defendant's Cross-Motion for Summary Judgment (D.I. 21) is GRANTED.

2.   Plaintiff's Motion for Summary Judgment (D.I. 18) is DENIED.

3.   The Clerk of the Court is directed to enter judgment in favor of defendant and

against plaintiff.

Leonard P. Stark
United States Magistrate Judge